OPINION OF THE COURT
Edward M. Rappaport, J.
Defendant moves to set aside his conviction pursuant to CPL 440.10 (1) (f) and (h) based upon the failure of the District Attorney to disclose Rosario material, namely, the Medical Examiner’s autopsy audiotape.
Defendant was convicted after jury trial of murder in the second degree and sentenced to a period of incarceration of 25 years to life. Defendant’s appeal from his conviction is currently pending before the Appellate Division, Second Department. Testifying at the defendant’s trial was Dr. Beverly Leffers, the Medical Examiner who conducted the autopsy of the deceased in this case. She testified that the cause of death was a gunshot wound to the neck with penetration of the spine. She further testified that she observed a few grains of gunpowder on the wound which indicated that the gun was fired from within a few feet of the deceased.
Dr. Leffers dictated the autopsy report onto an audiotape. This audiotape was never made available to the defendant’s trial attorney, Leo Kimmel. The defendant claims that the failure to turn over this tape is a Rosario violation requiring reversal of his conviction.
The Rosario rule requires that the prosecution make available to the defendant all prior statements made by a prosecution witness which relates to the subject of such witness’ testimony. (People v Rosario, 9 NY2d 286 [1961]; People v Ranghelle, 69 NY2d 56 [1986]; see also, CPL 240.45.)
When a valid claim of a Rosario violation is raised in a postconviction motion by a defendant prior to his completion of the appellate process, per se reversal of the conviction is required. (People v Jackson, 78 NY2d 638 [1991]; People v Robles, 194 AD2d 750 [2d Dept 1993].)
At issue in this case is an audiotape prepared by the Medical Examiner which represents her dictation to a secretary/typist of what was to be typed in the autopsy report.
As to the autopsy report itself, this court finds that this is a discoverable scientific report, CPL 240.20 (1) (c), and is Rosario *947 material if the Medical Examiner who prepared the report testifies at trial.
As for the audiotape, which represents the dictation to a secretary/typist, the court finds that it is not Rosario material as it is merely dictation, the means employed by the Medical Examiner to have his or her report typed by another person. This is analogous to a Grand Jury stenographer’s notes which are used to type the Grand Jury minutes. Although Grand Jury transcribed minutes of witnesses are Rosario material, the stenographer’s notes which are used to type the minutes are not.
However, when an autopsy report varies significantly from the audiotape, then the tape is no longer merely "dictation” and is instead a separate distinct statement which would be Rosario material if the Medical Examiner testifies at trial.
Underlying this determination is this court’s belief that the prosecutor has sufficient access to and control over the Medical Examiner’s records to render such records potential Rosario material. (See, People v Jones, NYLJ, Feb. 8, 1994, at 23, col 3 [Sup Ct, Kings County, Kreindler, J.].)
The court in this case signed a subpoena for the audiotape, and after receiving said tape, compared it to the autopsy report to determine whether it was merely "dictation.” Upon such comparison, the court found three minor inconsequential differences. Firstly, when dictating the report the Medical Examiner did not know the name of the deceased and dictated "unknown black female.” The name of the deceased, Erica Vereen, who was identified through dental records, was later substituted in the report. Secondly, the Medical Examiner dictated that the neck was unremarkable. The autopsy report contained the additional words "except as described below.” What was described below was not added, changed or altered from the dictation. Finally, the autopsy report contains a voucher number in which one number differs from the dictation.
Although the court found minor differences, they do not change or alter the substance of the autopsy in any way whatsoever. Thus, this court finds that in this case the audiotape was merely the dictation of the report and is not Rosario.
If, after the above analysis, it is determined that the audiotape constitutes Rosario material, the court must determine whether this holding should be applied retroactively to the particular case.
*948 In analyzing retroactive application, the Court of Appeals has held that "a new rule of State law need not automatically be applied to all cases currently in the direct appellate pipeline.” (People v Favor, 82 NY2d 254, 262 [1993].)
The right to Rosario material is derived from both CPL 240.45 and case law. This right is founded in the notion of fairness to avoid "a danger that something will be withheld from defense counsel which may assist him in impeaching the prosecution’s witness.” (People v Rosario, 9 NY2d, supra, at 290.) Because Rosario is based upon the State statutory right (CPL 240.45) and decisional law (see, People v Rosario, supra), the Mitchell-Pepper retroactivity test is applicable here. (See, People v Pepper, 53 NY2d 213 [1981]; People v Mitchell, 80 NY2d 519 [1992].) Thus the question is one of State law, not Federal law.
First, the court must determine whether this decision constitutes a "new” rule of law. The Court of Appeals has recognized three situations that create a "new” rule of law: (1) where a judicial holding overrules established precedent; (2) when there is a radical change in the continuity of the law that will cause more upheaval that is tolerable; and (3) where a court’s recent holding dramatically moves away from customary and established procedure. (People v Favor, supra, at 263.)
Prior to the fall of 1993, the District Attorney routinely did not make available to the defendant the audiotape of the Medical Examiner’s autopsy. Nor did defense counsel request such audiotapes as Rosario material. This court’s decision to subject the audiotape of an autopsy to review in order to determine if it constitutes Rosario material represents "a dramatic shift away from customary and established procedure.” (People v Mitchell, supra, at 525.) As such, the decision constitutes a "new” rule subject to the Mitchell-Pepper retro-activity test.
This test weighs three basic factors in determining retroactive application: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect on the administration of justice of retroactive application. (People v Mitchell, supra, at 528.) This court determines that the effect of retroactive application of the new rule on the administration of justice overcomes any consideration of the first two factors and weighs heavily against such application of this decision.
*949 To date, this Part has received five motions to set aside murder convictions based upon the failure to turn over audiotapes of autopsies. Dozens of such motions are pending before Justices in Kings County. If the law is applied retroactively and it is determined that such audiotapes are Rosario material that were not "made available,” then hundreds of homicide convictions would have to be reversed and retried. Such a result would in effect cripple the criminal justice system. Thus, even if this court would have found a Rosario violation under the new rule, it would not be retroactively applied to this case.
Defendant’s motion is in all respects denied.